IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION


BELVA JANE GILBERT,          )   CIVIL ACTION 4:06-2954-TLW-TER
                                )
        Plaintiff,        )
                                )
        v.          )
                                )  REPORT AND RECOMMENDATION
MICHAEL J. ASTRUE,[1]         )
COMMISSIONER OF SOCIAL    )
SECURITY,          )
                                )
        Defendant.     )
_____)


     This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

     The plaintiff, Belva Jane Gilbert , filed applications for DIB and SSI on July 2, 2003, alleging disability since June 9, 2003, as a result of osteoarthritis, fibromyalgia, and a "breathing and chest problem." (Tr. 92-97, 112). Her claims were denied initially and upon reconsideration.

_____

     [1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on September 15, 2005.  On October 22, 2005,  the ALJ issued a decision denying plaintiff's claim, finding she could return to her past relevant work as a truck dispatcher. As the Appeals Council denied plaintiff's subsequent request for review, the ALJ's decision  was the Commissioner's final decision under 42 U.S.C. § 405(g).

## II.  FACTUAL BACKGROUND

The plaintiff was born on September 23, 1946, and was 58 years of age on the date of her hearing before the ALJ.(Tr. 51).  Plaintiff has a the equivalent of a high school education and has past relevant work as a truck dispatcher.

## III.  DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

(1)    The ALJ erred in finding, in clear contravention of the substantial evidence in the record, that BJ could return to her past work as a truck dispatcher.

(2)    The ALJ failed to comply with 20 C.F.R. 404.1527 in not according adequate weight to the opinion of the Plaintiff's treating physicians.

(3)    The ALJ erred by failing to adequately consider the significant side effects of BJ's medications.

(4)    The ALJ erred by failing to adequately explain a number of his conclusions.

(Plaintiff's brief).

In the decision of October 22, 2005, the ALJ found  the following:

(1)    The claimant meets the non-disability requirements for a period of disability and disability insurance benefits set forth in Section 216(1) of the Social Security Act and is insured for benefits through the date of this decision.

(2)    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

(3)    The Claimant's degenerative disc disease, osteoarthritis, and fibromyalgia are considered "severe" based on the requirements in the Regulations 20 CFR §§404.1520(c) and 416.920(c).

(4)    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No.4.

(5)    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

(6)    The claimant has the following residual functional capacity: lifting and carrying up to 20 pounds occasionally and 10 pounds frequently and stooping, crouching, crawling, kneeling, climbing, balancing, and reaching overhead occasionally. She has no other restrictions in her ability to perform basic work-related activities.

(7)    The claimant's past relevant work as a truck dispatcher did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§404.1565 and 416.965).

(8)    The combined effect of all of the claimant's medically determinable impairments does not prevent the claimant from performing her past relevant work.

(9)    The claimant was not under a "disability" as defined in the Social Security Act at any time through the date of the decision (20 CFR §§404.1520 (F) and 416.920(F)).

(Tr. 31-32).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to:  (1) whether the decision of the Commissioner is supported by substantial evidence  and (2) whether the legal conclusions of the Commissioner are correct under controlling law.   Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978).  "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 390.  Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict.  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).   The Court's scope of review is specific and narrow.   It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence.   42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established.   Five questions are to be asked sequentially during the course of a disability determination.   20 C.F.R. §§ 404.1520, 1520a (1988).   An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV.  MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case.  The undisputed relevant medical evidence as set forth by the defendant is set forth herein, in part.

Krista Kozacki, M.D., treated plaintiff for various complaints during the period from December 2001 to August 2003 (Tr. 237-55). In December 2001, Dr. Kozacki noted plaintiff's diagnoses as right ovarian cyst, left carpal tunnel syndrome, fibromyalgia, and left shoulder pain (Tr. 253). In June 2002, plaintiff told Dr. Kozacki that she had been using Mobic for neck pain, but that she needed Darvocet to function; Dr. Kozacki noted that plaintiff's MRI scan showed degenerative disc disease with osteophytes and bulges (Tr. 249). In November 2002, plaintiff complained that her chest felt tired and that she experienced "flutters" at night (Tr. 246). Dr. Kozacki referred her to a cardiologist. (Tr. 246-47). She also noted that plaintiff's mood was "down a little as she is on unemployment and looking for a job" (Tr. 246). Dr. Kozacki later recommended a diabetic diet for plaintiff after her laboratory results showed an exaggerated response to insulin (Tr. 244). In February 2003, Dr. Kozacki treated plaintiff for acute bronchitis (Tr. 241-42). In June 2003, plaintiff complained of pain in the back and pelvis and difficulty with urination (Tr. 240). A CT scan showed kidney stones and a cyst in the right ovary (Tr. 240, 254-55).

On November 22, 2002, Thomas L. Stoughton, M.D., a cardiologist, examined plaintiff in relation to complaints of chronic chest pain and fatigue (Tr. 204-05). Dr. Stoughton noted that plaintiff had lost 60 pounds since her bypass surgery, had been able to stop using her CPAP machine, and was taking Toprol for ventricular tachycardia (Tr. 204). Dr. Stoughton suspected that

plaintiff's chest pain was "due to fibromyalgia and musculoskeletal etiology" (Tr. 204). He discontinued Toprol and ordered a stress test, echocardiogram, and Holter monitor study (Tr. 205). Plaintiff's echocardiogram showed preserved left ventricle systolic function, "trace" mitral insufficiency, and mild aortic insufficiency (Tr. 203). He ordered a stress test which was conducted on November 26, 2002. It was noted that she exercised for six minutes but the test was terminated due to fatigue. However, based on this stress test she showed fair exercise tolerance with no chest pain, no significant arrthymia, and normal blood pressure response to exercise (Tr. 202). Her Holter monitor study showed normal sinus rhythm (Tr. 201). On January 3, 2003, Dr. Stoughton concluded that plaintiff showed no evidence of structural heart disease that would explain her chest pain, which he attributed to fibromyalgia (Tr. 198).

In April and June 2003, plaintiff was seen at Free Medical Clinic of Darlington County. Medication was prescribed for hypertension and for pain in the neck and left trapezius muscle (Tr. 207-09).

Plaintiff received medications and instruction on a diabetic diet at CareSouth Carolina from January through September 2004 (Tr. 322-30). In her initial appointment on January 15, 2004, plaintiff complained of pain in the neck, shoulders, back and left arm; pain and weakness in the legs and left hip; and weakness in the arms and hands (Tr. 330). Kendra Watson, M.D., noted diagnoses of diabetes mellitus, fibromyalgia, hypertension, and renal stones (Tr. 329). On March 30, 2004, plaintiff complained of pain after falling when her legs went out on her" (Tr. 328). Dr. Watson found plaintiff's x-rays suggested avascular necrosis in the left hip and recommended an MRI scan (Tr. 327). On May 7, 2004, plaintiff complained of numbness in her hands (Tr. 327). On September 28,

2004, she complained of stumbling because her legs were "not working properly," and of "hurting all over" (Tr. 322).

On October 4, 2004, Dr. Watson completed a medical statement regarding plaintiff's osteoarthritis and fibromyalgia. In this report, Dr. Watson found that plaintiff had osteoarthritis and fibromyalgia, and was unable to walk at a reasonable pace for even one block (Tr. 331). Dr. Watson reported that plaintiff could not stand for any period of time, could sit for only four hours per day, and could work for only four hours per day (Tr. 331-32). Dr. Watson also stated that plaintiff could lift no weight frequently and only five pounds occasionally; and that she could never bend, stoop, use her hands for gross manipulation, or raise her arms above shoulder level (Tr. 332). She also stated that lying down was "not actually prescribed" for plaintiff, but that plaintiff should lie down "at her leisure when she is not feeling well" (Tr. 332).

Plaintiff continued to receive treatment at CareSouth Carolina through August 2005. On April 4, 2005, she complained of pain in her right side, nausea, swelling in her hands and feet, and rectal pain. Examination revealed no edema in the extremities and tenderness in the right upper quadrant (Tr.342). On May 4, 2005, plaintiff complained of pain in her feet, back and knees; she was diagnosed with fibromyalgia. (Tr. 340). On July 6, 2005, she complained of pain in the left knee and hip, and of numbness and swelling (Tr. 338) On examination, Benjamin T. Mitchell, III, M.D., noted findings of weakness in the left leg and numbness down the lateral side of the left leg, and diagnoses of neuropathy and back pain (Tr. 338).

On August 19, 2005, plaintiff complained of a feeling of tightness in the chest after she stopped taking Toprol (Tr. 336). On July 25, 2005, Dr. Mitchell completed a medical statement regarding low back pain. Dr. Mitchell opined that because of low back pain, plaintiff could stand

-8-

for only 30 minutes and sit for only 30 minutes at a time, lift 10 pounds occasionally and five pounds frequently, never bend or stoop, and work only two hours per day (Tr. 333).

On July 29, 2005, Dr. Mitchell completed a medical statement regarding fibromyalgia and opined that due to fibromyalgia, plaintiff could stand for 30 minutes and sit for 30 minutes at a time, stand for a total of two hours and sit for a total of four hours, and frequently lift five pounds, and work only two hours per day (Tr. 334). Dr. Mitchell also reported that as a result of fibromyalgia, osteoarthritis, diabetes, and hypertension, plaintiff could stand for 30 minutes and sit for 30 minutes at a time; stand for a total of two hours and sit for a total of 4 hours; lift 10 pounds occasionally and five pounds frequently; never perform fine or gross manipulation with either hand; occasionally raise her arms above shoulder level; and never bend, stoop, balance, work with dangerous equipment, or tolerate cold or heat (Tr. 335). Dr. Mitchell also said that plaintiff occasionally needed to elevate her legs during the workday and that she could work for only one hour per day (Tr. 335).

On January 7, 2004, plaintiff presented at Carolina Pines Regional Medical Center with complaints of left flank pain (Tr. 279-91). She was treated with medication for renal stone disease and underwent insertion of a kidney stent on January 23, 2004 (Tr. 279, 290, 320). Plaintiff underwent cystoscopy and stent revision for treatment of renal stone disease on July 12, 2004 (Tr. 316-21).

## **TESTIMONY**

At the hearing on September 15, 2005, plaintiff testified that she last worked as a parttime school cafeteria worker from February 2003 to May 2003, which involved lifting up to 30-to-35 pounds (Tr. 53-54). She testified that her job as a truck dispatcher involved almost constant sitting,

using telephones and fax machines, and no frequent lifting (Tr. 56-57). She testified that she was unable to work because of constant pain in her back, neck, legs and hips (Tr. 58). She said that her back pain was aggravated by rainy weather and prolonged sitting or standing in one position (Tr. 59). She said that she experienced a constant tingling sensation in her feet and a burning sensation in her feet after standing or walking for five minutes (Tr. 60-61). She testified that she felt dizzy and felt like her mind did not "work right" because of her pain medications (Tr. 67). She testified that she could prepare simple meals in a microwave but could not stand up and cook a full meal (Tr. 69); that she sat down to rest or leaned in a shopping cart when shopping for groceries (Tr. 69-70); and that she spent her afternoons watching soap operas and lying around (Tr. 69). She also testified that she elevated her legs frequently during the day to reduce swelling (Tr. 71).

## V.  PLAINTIFF'S SPECIFIC ARGUMENTS

To determine whether an individual is disabled, the Social Security Administration has promulgated regulations establishing a sequential evaluation process. 20 C.F.R. § 416.920 (1993). If an individual is found not disabled at any step, further inquiry is unnecessary.  20 U.S.C. § 416.920(a).  Under the process, the ALJ must determine in sequence; (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets the medical criteria of Appendix 1, which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents claimant from performing past relevant work.  If a claimant is unable to perform any of his past relevant work, the Secretary considers his residual functional capacity, as well as his age, education, and past work experience.  20 U.S.C. § 416.920(f).

-10-

Plaintiff does not appear to find fault with the ALJ's decision related to the first three steps of the sequential evaluation. The plaintiff alleges the ALJ erred at step four in finding that she had the residual functional capacity to return to her past work, by not giving controlling weight to the opinions of Dr. Watson and Dr. Mitchell, by failing to consider the side effects of her medication, and by failing to determine the demands her past work.

As to plaintiff's argument that the ALJ erred in not giving Dr. Watson and Dr. Mitchell's opinions with respect to her limitations controlling weight, the undersigned agrees.

The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is consistent with the other evidence in the record. 20 C.F.R. § 404.1527(d) (1997). Conversely, if a physician's opinion is not supported by medically-accepted clinical and laboratory diagnostic techniques and is not consistent with the other evidence in the record, it will not be given controlling weight. In evaluating how much weight should be given to the opinion of a physician, the nature and extent of the treatment relationship will be taken into account. Id.

Although not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 524,527 (4th Cir. 1988); Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589. The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects

-11-

an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

In the hearing decision, the one of the reasons the ALJ gave for discounting the treating physicians' opinions was because the opinions "are persuasively contradicted by their own progress notes as well as by the other evidence of record." (Tr. 29). As further reasoning for discounting the treating physicians' opinions, the ALJ finds that the reports completed by Dr. Watson and Dr. Mitchell contradicted each other with respect to her limitations. As set out above, with respect to plaintiff's fibromyalgia, Dr. Watson opined in October 2004, that plaintiff could not stand for any period of time, could only sit for four hours, and could only work four hours per day. (Tr. 331-332). In July 2005, Dr. Mitchell completed a medical statement and opined that due to fibromyalgia, plaintiff could stand for 30 minutes and sit for 30 minutes at a time, stand for a total of two hours and sit for a total of four hours, frequently lift five pounds, and work only two hours per day. (Tr. 334). While the limitations reports may vary somewhat and are not exact copies of each other, both treating physicians concluded that plaintiff had an impairment that would interfere with her ability to work based on limitations with walking, sitting and standing. It is further noted that the reports were completed about eight months apart. Additionally, both Dr. Watson and Dr. Mitchell opined that plaintiff could never perform gross manipulation with her hands. A review of the ALJ's decision reveals he concluded that "the record contains no description of any underlying impairment that would reasonably interfere with her ability to sit." (Tr. 28). Based on the above, this is an incorrect finding. The undersigned finds no contradictory medical evidence by a treating or examining medical doctor put forth by the ALJ to substantiate not giving the treating physicians' opinions great

-12-

weight. Thus, the undersigned finds that the ALJ improperly disregarded Dr. Watson's and Dr. Mitchell's opinions with regard to plaintiff's functional limitations. Accordingly, it is recommended that this case be remanded back to the Commissioner to give the proper weight to the treating physicians' opinions and any explanations for discounting them comply with the Rules.

Plaintiff argues, based on her functional limitations, that the ALJ erred in finding that she could return to her past relevant work a truck dispatcher. As previously discussed, the undersigned concludes that ALJ improperly disregarded Dr. Watson's and Dr. Mitchell's opinions with regard to plaintiff's functional limitations. Based on the objective findings in the medical record, the functional limitations placed on plaintiff by her treating physicians, and the plaintiff's testimony as to her functional limitations, the undersigned concludes the ALJ did not conduct a proper analysis as to whether or not plaintiff could perform a full range of light work and, thus, her past relevant work as a truck dispatcher. A proper analysis may include the need for vocational expert testimony. Accordingly, the undersigned recommends that the case be remanded to the Commission.

It is further recommended that the ALJ perform the analysis as required by the Rules of Social Security with respect to the plaintiff's medication. The ALJ should address the side effects of the medication plaintiff takes on a continuous basis and the effect of such medication. Further, the ALJ should consider the effect of such medication(s) on plaintiff's ability to perform her past work and/or present any side effects found to the vocational expert in a hypothetical.

**VI.  CONCLUSION**

Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c) (3), it is,

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 6, 2008
Florence, South Carolina

-14-